Filed 8/15/22  Steven P. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

|  |  |
|---|---|
| STEVEN P., | F084447 |
| Petitioner, | (Super. Ct. Nos. JJV073438A, JJV073438B) |
| v. | |
| THE SUPERIOR COURT OF TULARE COUNTY, | **OPINION** |
| Respondent; | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

**THE COURT**[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  John P. Bianco, Judge.

Steven P., in pro. per., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

[*]      Before Hill, P. J., Detjen, J. and DeSantos, J.

Steven P. (father), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452)[1] from the juvenile court's orders issued at a 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[2] on May 11, 2022, terminating reunification services and setting a section 366.26 hearing for August 31, 2022, as to his now seven-year-old son, S.P., and five-year-old son, D.P. In his writ petition signed on May 23, 2022, father advised that he was incarcerated in Wisconsin and expected to be released on July 5, 2022, at which time he would like custody of his children. We conclude father's writ petition fails to comply with the content requirements of rule 8.452 and dismiss it as facially inadequate for review.

### PROCEDURAL AND FACTUAL SUMMARY

In March 2021, the Tulare County Health and Human Services Agency (agency) received an immediate referral that then six-year-old S.P. had a black eye. A social worker and deputy from the sheriff's office met with mother, K.S. (mother). She said S.P. sustained the black eye from a fall while he was with his aunt. She denied abusing her children and said she sometimes consumed alcohol. The children appeared to be slightly malnourished and fatigued. The social worker tried to engage the children but they seemed to be nonverbal. Both children were very dirty and appeared not to have bathed for a long time. The house was also very dirty and mother was slurring her speech as if under the influence of some substance. She refused to spot test and was arrested for being under the influence of a controlled substance and possession of methamphetamine. The children were taken into protective custody and placed in a foster home.

The following day, the foster mother reported the children had a lot of marks and bruises on their backs, buttocks, and legs. S.P. had scratches on his hand and face near his eye, a huge bruise/scrape mark covering at least half of his buttock, a one-inch

---

[1]    Rule references are to the California Rules of Court.

[2]    Statutory references are to the Welfare and Institutions Code.

2

bruise/scrape mark on his arm and upper wrist area which was dark red and faded black in color, a circular bruise around his knee approximately the size of a quarter, what appeared to be a cigarette burn on his back which exposed his flesh, and scars and older wounds on his back. The children had severe speech impediments but the foster mother was able to understand some of what they said. They disclosed seeing their mother being beaten by an uncle and made punching motions to their faces to demonstrate.

Mother claimed the marks on S.P.'s back were the result of scabies but she could not prove it. She denied abusing the children, stating they fell and got " 'owies.' "

Father was incarcerated in Wisconsin with an anticipated release date in July 2022. He told the social worker he had been "hard into drugs" around October and November 2019. His drugs of choice were methamphetamine and heroin. He completed an alcohol and other drug program but did not provide any details. He and mother had no history of child welfare intervention and he believed she was a good mother.

The juvenile court exercised its dependency jurisdiction over the children in June 2021, finding mother physically abused them, causing serious physical harm, and neglected and failed to protect them and that father was incarcerated and could not arrange for their care. (§ 300, subds. (a), (b)(1) & (g).) The court ordered mother to participate in reunification services but denied father services under section 361.5, subdivision (e) because of the length of his incarceration.

Mother participated in her services plan and made progress. She was pregnant and due to deliver in April 2022 but would not identify the father. She took responsibility for her drug use but continued to deny any domestic violence and physical abuse. She accused the foster parent of telling the children to talk about abuse. The children were happy in their placement. S.P. stated, referring to the foster mother, "I like her, mom, I'm happy, stay at this house." He said he was worried that mother was "gonna knock on

3

the door and say I want my kids back." The three-year-old stated, "I don't like seeing her, her hurt me." They were assured that mother did not know where they were living.

In its report for the six-month review hearing, the agency recommended the juvenile court continue mother's reunification services and modify mother's services plan to include a child abuse intervention program. If she failed to reunify, mother wanted the children placed with their paternal grandmother in Wisconsin. Father agreed with that plan. The paternal grandmother and the children's foster parent were willing to adopt the children if reunification failed.

At the six-month review hearing in January 2022, the juvenile court continued reunification services for mother, added child abuse intervention and a mental health assessment to her case plan and set a 12-month review hearing for May 11, 2022.

In February 2022, the agency filed a modification petition under section 388, asking the juvenile court to terminate visitation because of the children's high-risk behavior. They hit and punched mother, destroyed toys, stomped on the food mother brought, ran in and out of the visitation rooms, ran through the office, and attempted to leave the building. They brought up past abuse and stated they did not want to visit mother. At a hearing in April 2022, the juvenile court granted the agency's request.

The agency recommended the juvenile court terminate the mother's reunification services at the 12-month review hearing. Although she completed her reunification services, she had not changed her behavior. She engaged in domestic violence with the uncle, which resulted in her sustaining a popped blood vessel in her eye. She also had his baby even though she denied being in a relationship with him. The baby was taken into protective custody.

The agency also recommended the juvenile court discontinue the children's video visits with father because it confused them and caused them to act out. During their first video visit in March 2022, the children did not know who father was and could be heard

4

slamming chairs into the walls and doors. Afterward, D.P. kept saying, " 'that no my dad, uncle my dad and I hate him.' " S.P. went " 'nuts' " and kept asking if he had two uncles or two dads.

On May 11, 2022, the juvenile court conducted a contested 12-month review hearing and heard testimony from the children's therapists. The court terminated mother's reunification services and set a section 366.26 hearing. The court also terminated father's visits, finding visitation was detrimental to the children. Mother did not file a writ petition.

## DISCUSSION

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the juvenile court's orders from the setting hearing must, as father did here, file an extraordinary writ petition in this court to initiate writ proceedings. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record. (Rule 8.452(b).) In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy recognizing that a parent representing him or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, father does not argue the juvenile court erred in terminating mother's reunification services and setting a section 366.26 hearing. He merely requests

5

placement of the children upon his release from custody. Since placement is an issue that must first be raised in the juvenile court and since father does not assert juvenile court error, his writ petition is inadequate for appellate review. Consequently, we dismiss it.

## DISPOSITION

The petition for extraordinary writ is dismissed. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).